1  MARK F. ADAMS
   Attorney at Law
2  California State Bar No. 097377
   964 Fifth Avenue, Ste. 335
3  San Diego, CA  92101
   Telephone: (619) 239-4344
4  Facsimile: (619) 544-1429

5  Attorney for Defendant
   **Victor Ramos**

6

7

8

9                          UNITED STATES DISTRICT COURT

10              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  UNITED STATES OF AMERICA,              ) **CASE NO. 07CR2985-02-WQH**
                                           )
12                   Plaintiff,            )
                                           )
    v.                                     ) **NOTICE OF MOTION AND**
13                                         ) **MOTION FOR DISCLOSURE**
     VICTOR RAMOS, et. al.                 ) **OF PROFFER INFORMATION**
14                                         )
                     Defendant             )
15                                         ) DATE: December 17, 2007
                                           ) TIME:  2:00 p.m.
16  _____ )

17  TO:   KAREN P. HEWITT, UNITED STATES ATTORNEY, AND
          MICHAEL J. CROWLEY AND TIMOTHY F. SALEL, ASSISTANT UNITED
18        STATES ATTORNEYS:

19       PLEASE TAKE NOTICE that defendant, VICTOR RAMOS, by and through his

20  attorney, Mark F. Adams,  and pursuant to Rules 12 and 16 of the Federal Rules of

21  Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*,

22  and the Fifth and Sixth Amendments to the United States Constitution, will, at the time

23  and date stated above, move for disclosure of Proffer Information as more particularly

24  described below:

25                              **MOTION**

26       Defendant, VICTOR RAMOS, by and through his attorney, and pursuant to

27  Rules 12 and 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, *Giglio*

28

*v. United States*, 405 U.S. 150 (1972), and the Fifth and Sixth Amendments to the United States Constitution, hereby moves for disclosure of Proffer Information of informants and cooperating witnesses, including the following information:

(1)    Initial discussions between the Assistant U.S. Attorney and cooperator's counsel regarding the information the cooperator's attorney believes the cooperator will give;

(2)    Initial discussions between the Assistant U.S. Attorney and cooperator's counsel regarding the extent of benefits to be offered to the cooperator;

(3)    Actual proffer by cooperator as well as any statements by his counsel;

(4)    Initial discussions between the Assistant U.S. Attorney and the case agent regarding their opinion as to the completeness and truthfulness of the proffer;

(5)    Subsequent discussions between the Assistant U.S. Attorney and cooperator's counsel regarding the additional information the Government believes the cooperator should provide (assuming an assessment has been reached that the initial proffer is either incomplete or misleading); and

(6)    Subsequent discussions regarding the extent of benefits to be offered to the cooperator as well as the actual benefits ultimately offered.

We are filing this motion early to give the prosecution fair notice of our position as to the importance of the requested information, and to encourage the prosecution to keep better notes than they ordinarily might.

This motion is based upon this motion and notice of motion, the attached statement of facts and memorandum of points and authorities in support of these motions, the records and files in this action, and any and all other matters that may be presented prior to or at the time of the hearing.

Dated: November 13, 2007              */s/ Mark F. Adams*
                                      MARK F. ADAMS
                                      Attorney for Defendant
                                      **Victor Ramos**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 07CR2985-02-WQH |
|       Plaintiff, | ) |
| v. | ) CERTIFICATE OF SERVICE |
| VICTOR RAMOS, *et. al.*, | ) |
|       Defendants. | ) |

IT IS HEREBY CERTIFIED THAT:

I, Mark F. Adams, am a citizen of the United States and am at least eighteen years of age. My business address is 964 Fifth Avenue, Suite 335, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of the defense MOTION FOR DISCLOSURE OF PROFFER INFORMATION on the following parties by electronically filing the foregoing with the Clerk of the United States District Court using its ECF System, which electronically notifies the following individuals:

Michael J. Crowley, Attorney for the Government, Michael.Crowley2@usdoj.gov

Timothy F. Salel, Attorney for the Government, Timothy.Salel@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct and that this proof of service was executed on November 13, 2007 at San Diego, California.

*/s/ Mark F. Adams*
Mark F. Adams

MARK F. ADAMS
Attorney at Law
California State Bar No. 097377
964 Fifth Avenue, Ste. 214
San Diego, CA  92101
Telephone: (619) 239-4344
Facsimile: (619) 544-1429

Attorney for Defendant
**Victor Ramos**

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | **CASE NO. 07CR2985-02-WQH** |
|---|---|---|
| Plaintiff, | ) | **POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISCLOSURE OF PROFFER INFORMATION** |
| v. | ) | |
| VICTOR RAMOS, et. al. | ) | |
| Defendant | ) | DATE: December 17, 2007 |
| _____ | ) | TIME:  2:00 p.m. |

**Introduction**

Defendant, VICTOR RAMOS, is charged along with eight co-defendants with conspiracy to distribute over 500 grams of a mixture and substance containing methamphetamine in the above-captioned Indictment, however the case has been identified and filed as related to two other indicted cases pending before this Court, case numbers 07CR1407 and 07CR1408.  Those cases accuse twenty others with serious methamphetamine and forfeiture allegations arising from a months long undercover investigation apparently relying on Title III wiretaps, undercover narcotics agents, and confidential informants   It would not be unduly surprising if one or more of the joined and/or related co-defendants pleaded guilty and provided information to the government to gain a lower sentence.

We also believe the possibility exists that during the course of the investigation, the government may have obtained pre-indictment plea agreements from individuals not charged in this series of cases.  The defense expects these individuals also may provide or have already provided information to the government to gain a lower sentence or other consideration from the government.  If the government plans to use these informant-type witnesses in the case against the defendant, then we are entitled to the proffer information, as discussed herein.

### The Proffer System

The proffer system is the descriptive term used to describe the manner in which represented persons become Government witnesses.  (*See* U.S.S.G. §§ 5C1.1, 5K1.1)  Government agents have testified about the proffer system on many occasions, describing the process of learning what the cooperating person may know vis-a-vis the known facts.[1]  The following description of the proffer system is supported by that testimony and the experience of counsel in this case.

Generally, the manner in which a represented person enters into a proffer agreement is as follows: the represented individual's[2] attorney contacts or is contacted by an Assistant U.S. Attorney to determine whether the cooperator desires to provide information and/or testimony to the Government.

The Assistant U.S. Attorney typically will want to know what information the cooperator will deliver, expecting at all times that it will be truthful. The cooperator will wish to ascertain the type (and extent) of benefits the Government is prepared to offer in exchange.

The cooperator's attorney will then make a "proffer" of what the cooperator will

---

[1]  A government agent so testified in the case of *United States v. Ayala, et. al., Case No. 94 CR 0476* heard in the United States District Court for the Southern District of California, Hon. Irma E. Gonzalez presiding.  Counsel can provide the Court with a transcript of that testimony if the Court so desires.

[2]  Whether it be an informant or cooperating defendant, we refer to them herein as the "cooperator."

1   state. Following an initial assessment by the Assistant U.S. Attorney and the case agent
2   as to whether this type of information would be desirable to obtain, they will meet with
3   the cooperator, typically in the presence of the cooperator's attorney.

4          The information provided by the cooperator will then be evaluated by the
5   Assistant U.S. Attorney and case agent to determine whether it comports with
6   information they have reason to believe the cooperator should have and, if so, whether
7   it is complete or incomplete. If the information does not comport with the agent's
8   expectation, the Assistant U.S. Attorney and case agent will assess the nature and
9   extent of the inconsistency or inconsistencies.

10         Often the Assistant U.S. Attorney and agents are critical of the first proffer. They
11  will indicate the proffer is insufficient because it is either untruthful or incomplete.  They
12  will typically respond by informing counsel they believe the cooperator has either
13  withheld or mis-represented information and will "proffer" their own belief as to the
14  manner and extent to which the cooperator's proffer was incomplete or misleading.
15  Sometimes this is done as an interrogation technique just to make sure the cooperator
16  is not holding back information.

17         In such an instance, the cooperator will then meet with the Government for a
18  second proffer session in order to alleviate the concerns of the Government by
19  providing a supplemental statement which will either "correct" the perceived
20  inconsistencies or provide a "more complete" rendition of events known to the
21  cooperator.  Such a session is critical in the mind of the cooperator, and their
22  attorney(s), because without the agreement of the Government to tender or recommend
23  the sought after benefits, the first proffer session is of no utility to the cooperator.[3]

24         All of the information sought herein is *Brady* material because it impacts the
25  cooperator's ultimate credibility, and should be ordered disclosed by the Government to
26

27         [3]  It could also serve as the basis for an 18 U.S.C. § 1001 prosecution or a U.S.S.G. § 3C1.1
28  obstruction of justice enhancement.

the defense.  Where the cooperator's story changes from one session to the next, that fact directly impacts the credibility of the cooperator.

It is the purpose of this motion to allow the jury to hear all the evidence that reflects on the cooperating witnesses' credibility. The proffer system *may be* necessary in our system of justice, but it can encourage perjury. At times an informant is told by his counsel what the government expects to hear from the informant when he is debriefed. This is a fact that should be known to the jury. They may find the informant made his or her story adapt to that which the government expected.

And, if through the cooperator's counsel the cooperator's proffer to the government changed, then this too should be told to the jury. They may determine that the cooperator changed his story to try to curry favor with the government and to earn more cooperation points.

Too often testimony is shaped, influenced and formed before the first government debriefing of the cooperator. But, typically, all the defense receives is the finished product of the debriefing. Oftentimes agents wait until several proffer sessions have been completed to write a comprehensive report that does not contain all of what the cooperator said and what transpired between counsel for the cooperator and government counsel.

In addition, defense counsel are often given plea agreements which indicate the government is committed to no specific amount of downward departure based on cooperation. But often the cooperator has an expectation based on a potential range of downward departures the government may be willing to recommend. If the cooperator's counsel and the AUSA talked about a possible range of downward departure and this information was relayed to the cooperator, it would be relevant for two reasons:

First, it would be relevant because the existence of a "range" indicates that the *amount* of downward departure, as opposed to the *fact* of downward departure, depends on the quality of the information provided. Again, it may be argued that our

1
2
3

system of justice should not allow this type of inducement to an informant. But we are not arguing that point in this motion. We are only arguing that the defense and the jury should know about the inducement.

4
5
6

Second, if the discussion of a range of downward departure is not mentioned in the plea agreements but was shared by defense counsel with his client, then it may affect the cooperator's state of mind. This again is a fact the jury should know.

7
8
9

It is for these reasons we will subpoena information from the informants' counsel, when known, and have filed this motion requesting the Court order the government to provide the information.

10
11

**Any Variance in a Statement of Either**

**an Informant or a Cooperating Witness is Brady Material**

12
13

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), provides that exculpatory material in the government's possession must be released to criminal defendants.

14
15
16
17
18

The Courts have interpreted *Brady* liberally when reviewing cases involving the type of informant information that is exculpatory. The following cases demonstrate that reversal of a conviction is not uncommon for failure of the government to provide impeaching information. Certainly the cases would mandate the information we seek herein.

19
20
21
22
23
24
25

Evidence impeaching the testimony of a government witness falls within the *Brady* rule when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Giles v. Maryland*, 386 U.S. 66 (1967) (prior contrary statements of a prosecution witness); *United States v. Strifler*, 851 F.2d 1197, 1201 (9th Cir.1988), *cert. denied*, 489 U.S. 1032 (1989) (*Brady* information includes "material . . . that bears on the credibility of a significant witness in the case); *United States v. Hanna*, 55 F.3d 1456 (9th Cir. 1995).

26
27

Under *Brady*, the prosecutor's withholding of evidence favorable to the accused violates due process where the evidence is material either to guilt or innocence or to

28

1   punishment, irrespective of the good faith or bad faith of the prosecution.  *Brady v.*
2   *Maryland*, 373 U.S. at 87; *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988).
3   Favorable evidence includes impeachment evidence.  *Id*. at 1402.

4       Evidence is material under *Brady* if "there is a reasonable probability that, had
5   the evidence been disclosed to the defense, the result of the proceeding would have
6   been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *United States v.*
7   *Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (Evidence is material so long as it will "play
8   an important role in uncovering admissible evidence, aiding witness preparation,
9   corroborating testimony or assisting impeachment or rebuttal.").

10       The government may not convict on the basis of false testimony even if the
11   prosecution offered the evidence in good faith.  *United States v. Young*, 17 F.3d 1201,
12   1203-04 (9th Cir.1994).  In fact, the prosecution may not allow unsolicited false
13   evidence to remain uncorrected at trial. *Napue v. Illinois*, 360 U.S. 264 (1959).

14       Since changes in the cooperator's proffer through counsel reflect an
15   inconsistency in the cooperator's statement, this is the type of information the jury
16   needs to hear to evaluate the credibility of the cooperator.

17   **The Content of Negotiations Regarding the Amount of**
18   **A Downward Departure to be Recommended by the**
19   **Government pursuant to U.S.S.G. 5 K 1.1 is Brady Material**

20       An informant's expectation at the time a proffer is given is relevant to the
21   credibility of an informant.  Since it is the witness' state of mind regarding benefits to be
22   received which may motivate him to color or shade testimony, or even to perjure himself
23   outright, in the hopes of receiving an enhanced benefit in the form of a Government
24   request for a reduced sentence, this information must be disclosed under *Brady*.  The
25   Courts have also granted wide latitude to defense lawyers in discovering all
26   government-provided benefits to an informant.

27       The motive of any witness to testify is discoverable.  *Giglio v. United States*, 405

28

U.S. 150 (1972). A witness' motive to testify in favor of one party and against another is

admissible into evidence. Fed. R. Evid. 608.  As urged by the Ninth Circuit:

> Because the government decides whether and when to use
> such witnesses, and what, if anything, to give them for their
> service, the government stands uniquely positioned to guard
> against perfidy.  By its actions, the government can either
> contribute to or eliminate the problem.  Accordingly, we
> expect prosecutors and investigators to take all reasonable
> measures to safeguard the system against treachery.  This
> responsibility includes the duty as required by *Giglio* to turn
> over to the defense in discovery all material information
> casting a shadow on a government witness's credibility.

*United States v. Brumel-Alvarez*, 991 F.2d 1452, 1463 (9th Cir. 1992).

Evidence that the Government has threatened a potential witness to gain the

witness' cooperation is admissible and may also demonstrate unconstitutional

interference with the defendant's right to free access of witnesses.  *United States v.*

*Heller*, 830 F.2d 150, 154 (11th Cir. 1987). A witness could perceive a threat if the

Government expresses dissatisfaction with their proffer.

Accordingly, *Giglio* material is discoverable to allow defense counsel to establish

possible bias or hostility on the part of an informant/cooperating witness.  It is proper

impeachment to question a cooperating witness about the dismissal of charges against

him or other preferential treatment.  *United States v. Nickerson*, 669 F.2d 1016, 1018

(5th Cir. 1982).[4]

It is not just realized promises which must be disclosed.  Unconsummated

promises or awards or benefits are considered <u>crucial</u> to the defense.  *United States v.*

*Williams*, 954 F.2d 668, 672 (11th Cir. 1992).  This is because it is the witness'

expectations, not the prosecutor's intentions, which will govern and color the witness'

potential testimony.

Prosecutors must disclose to the defense information known to or available to

---

[4]Impeachment information tendered by a regular witness may be subject to *Brady*.  *See Paradis v.*
*Arave*, 130 F.3d 385, 392 (9th Cir. 1997) (handwritten notes shortly after murder victim's autopsy which
depict coroner to have held the opinion that victim did not die in the creek in which her body was found
should have been produced).

them which may develop doubts about truth of a government witness' narrative. *United States v. McVeigh*, 954 F.Supp. 1454 (D. Colorado 1997).

The Eleventh Circuit Pattern Criminal Jury Instructions, cited with approval by the Court in *United States v. Bernal-Obeso*, 989 F.2d 331, 334 (9th Cir. 1993), highlight the importance of such evidence in judging the credibility of an informant or witness. Instruction 1.1 states:

### Accomplice-Informer Immunity

The testimony of some witnesses must be considered with more caution than the testimony of other witnesses. For example, a paid informer, or a witness who has been promised that he or she will not be charged or prosecuted, or a witness who hopes to gain more favorable treatment in his or her own case, may have a reason to make a false statement because he wants to strike a good bargain with the Government. So, while a witness of that kind may be entirely truthful when testifying, you should consider that testimony with more caution than the testimony of other witnesses.

In *United States v. Service Deli*, 151 F.3d 938 (9th Cir. 1998), the Court held that handwritten notes taken by an antitrust attorney during an interview with a former principal of the contractor was *Brady* evidence; and the government's failure to disclose these notes required reversal.

In *Service Deli*, the former principal (Ditzel) was interviewed on seven occasions, but the first three did not result in the generation of a written statement. In the first three interviews, Ditzel denied any discussion of prices, but in the fourth he finally admitted prices were discussed and notes were taken by an antitrust division attorney at that December 6 interview.

The government did not turn over the notes of that interview, but instead produced a typewritten summary, dated October 9, 1996. In submitting the summary, the government represented to the district court that the memorandum contained the substance of the December 6 interview. Pursuant to an order of limited remand, the district court examined the notes and found there was nothing in the notes that was

8                                    07CR2985-02-WQH

1    "material to the matter at hand that was not discussed and disclosed in the

2    memorandum."

3         The Court of Appeals reversed.  The appellate court reviewed the notes and

4    compared them to the summary produced by the government.  Contrary to the district

5    court, it found there were discrepancies between the notes and the summary

6    memorandum sufficient to require the disclosure of the original notes to the defendant.

7    The Court then requested both parties to address whether any discrepancies between

8    the notes and the typewritten summary were prejudicial.  The Court found the failure to

9    disclose was prejudicial:

10              Because the foundation of the government's entire case
               rests upon the testimony of one key witness, Gunther Ditzel,
11             the reliability of that witness clearly is determinative of the
               defendant's guilt or innocence.  (Citation)   Any
12             impeachment evidence, therefore, falls within the *Brady* rule
               and should have been produced by the government. . . .  If
13             this had been a case in which the government presented
               multiple witnesses, or strong evidence to support the
14             testimony of a key witness, or evidence of guilt was
               otherwise overwhelming, withholding of impeachment
15             material might not have affected the trial's outcome.  But
               here, the government's entire case rested on Ditzel's
16             testimony.  Service Deli's defense was built around attacking
               Ditzel's credibility as a witness.  In that sense, Ditzel's
17             credibility was not just a major issue; it essentially was the
               only issue that mattered.

18

19         In *United States v. Croft*, 124 F.3d at 1120-1121 (9th Cir. 1997), the

20    government's cooperating witnesses testified pursuant to conditional plea/immunity

21    agreements.  Those agreements each contained clauses stating that the witness was to

22    testify truthfully, that if the witness breached the agreement it became void and the

23    government could proceed as if the agreement never existed, and that the government

24    retained the exclusive right to determine whether the agreement had been breached.

25    Croft argued the agreements violated her Sixth Amendment right of confrontation,

26    because they forced the government's witnesses to testify to the government's

27    approved version of the "truth."  The district court ruled it would not enforce the clause

28

granting the government the exclusive right to determine whether the agreement had

been breached insofar as that exclusive right encompasses the right to determine

whether the witness had told the truth.  The court of appeals declared that the district

court had properly condemned such a provision.

In *United States v. Brumel-Alvarez*, *supra*, the Government withheld a

memorandum written by a government witness which was highly critical of a

government informant's integrity and role during the course of an undercover drug

investigation.  The Ninth Circuit held this violated the defendants' right to due process

under *Brady* and violated the Jencks Act.  As stated by the Court:

> We also reject the government's argument that the Levine
> Memorandum contained merely cumulative evidence.  In
> truth, it contained evidence contradictory to the
> government's position. The jury, not the prosecutor, has the
> duty to sift through the inconsistencies of testimony, to weigh
> the credibility of witnesses and to resolve any ambiguities in
> the evidence.

*United States v. Brumel-Alvarez*, 991 F.2d at 1463.  The Court went on to explain:

> Wheeler's credibility as a witness was an important issue in
> the case.  Evidence that he lied during the investigation, that
> he had an undue influence on the DEA and Customs agents
> involved in the investigation, or that he thwarted the
> opportunity to gather crucial evidence, would be relevant to
> his credibility and the jury was entitled to know of it. . . .
> Agent Robles might have been impeached with the
> memorandum as well.

*Id.*

Prosecutors and investigators must take all reasonable measures to safeguard

the system of use of informants against treachery, and that responsibility includes the

duty as required by *Giglio* to turn over to the defense in discovery **all** material

information casting a shadow on a government witness' credibility.  *United States v.*

*Bernal-Obeso*, 989 F.2d 331, 334-336 (9th Cir. 1993).  The Court explained:

> . . . we have decided on balance not to prohibit, as some
> have suggested, the practice of rewarding self-confessed
> criminals for their cooperation, or to outlaw the testimony in
> court of those who receive something in return for their
> testimony.  Instead, we have chosen to rely on (1) the

1

2

3

4

5

6

7

           integrity of government agents and prosecutors not to
introduce untrustworthy evidence into the system; (2) trial
judges and stringent discovery rules to subject the process
to close scrutiny; (3) defense counsel to test such evidence
with vigorous cross examination; and (4) the wisdom of a
properly instructed jury whose duty it is to assess each
witness's credibility and not to convict unless persuaded
beyond a reasonable doubt of the accused's guilt. . . .
Because we have made this choice, it is essential that
relevant evidence bearing on the credibility of an
informant-witness be timely revealed (1) to defense counsel
as required by *Giglio*, and (2) to the ultimate trier of fact,
unless clearly cumulative or attenuated.

8

*Id.* (Citations omitted.)

9

      The prosecution's failure to disclose salient information unearthed during its

10

investigation into a defendant's claim that she had been coerced by a drug trafficker

11

into carrying heroin into United States violated the Government's obligations under

12

*Brady* and *Giglio*.  *United States v. Udechukwu*, 11 F.3d 1101 (1ˢᵗ Cir. 1993)

13

      In *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997), (*en banc*), the Court granted

14

a convicted murder's petition for a writ of habeas corpus on the basis of a

15

*Brady* violation relating to a confidential informant's testimony.  "The disclosure

16

obligation exists, after all, not to police the good faith of prosecutors, but to ensure the

17

accuracy and fairness of trials by requiring the adversarial testing of all available

18

evidence bearing on guilt or innocence."  *Id.*, 132 F.3d at 478-479.

19

      In *Singh v. Prunty*, 142 F.3d 1157 (9th Cir. 1998), the Court, reversing the denial

20

of a petition for a wit of habeas corpus filed by a defendant convicted of hiring a

21

"hitman" to murder his wife and stepdaughter, held that nondisclosure of the state's

22

agreement to provide benefits to witness in exchange for his testimony violated due

23

process.  These benefits related to favorable treatment the confidential informant

24

received regarding his various criminal charges and prior convictions.

25

      The Government's failure to disclose a side deal with a cooperating witness'

26

counsel may violate *Giglio v. United States*, 405 U.S. 150, 154-155 (1972).  The Ninth

27

Circuit, in *Willhote v. Zyzemore*, 921 F.2d 247 (9th Cir. 1990), stated:

28

The Government's case depended almost entirely on the testimony of the witness with whom the undisclosed deal had been made; without it there could have been no indictment and no evidence to carry the case to the jury. The witness' credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.

Judge Trott, concurring, stated:

Why did the prosecutor make a secret "side deal" with the attorney for the cooperating defendant/witness Meyer? Why did the prosecutor not want Meyer himself to know of the hidden benefit to be derived by him from testifying? There is a clear answer to these questions: The prosecutor wanted to deprive the jury and the defendants of information to which they would ordinarily be entitled, *i.e.*, information reflecting on the credibility of a key prosecution witness. Keeping Meyer in the dark permitted him to do that. My respected colleagues describe this case as involving a simple failure to disclose part of the plea agreement. I see it as more than that: It involves a pernicious scheme without any redeeming features, a scheme that can only spawn unnecessary post-trial motions and appeals when its presence in a case becomes known to the defense. The scheme violates both the letter and spirit of *Giglio* . . . Every prosecutor knows that competent defense attorneys will use—and appropriately so—the sweetness of the quid pro quo tendered to one defendant to testify against another as the basis of an argument to a jury that the witness's testimony has been compromised or purchased, and is thus suspect. This case provides an example of this situation. . . I find it most troublesome to condone a secret deal between a prosecutor and a witness's attorney. This objectionable practice is, among other things, nothing more than an improper way around the right to confront witnesses.

Hence, all information regarding potential and realized proffers must be disclosed to the defense.

### Brady Material Need Not Be Reduced To Writing

It is clear and undisputed that a memorandum detailing an interview with a witness, which set forth facts inconsistent with the witness' testimony, qualifies as *Brady* evidence. *United States v. Pelullo*, 14 F.3d 881 (3d Cir. 1994)

*Brady* itself places **no** limitation on the form of the evidence required to be disclosed; rather, it simply refers to "evidence favorable to an accused." *Brady v.*

1   *Maryland*, 373 U.S. at 87.

2       The Government must make a reasonable effort in aiding the defense to obtain

3   favorable evidence or witnesses. *United States v. Hernandez-Gonzalez*, 608 F.2d

4   1240, 1246 (9th Cir. 1979). Knowledge of exculpatory evidence is imputed to the

5   prosecutor as the acting agent of the Government. *United States v. Wood*, 57 F.3d 733

6   (9th Cir. 1995).

7       The inherent unreliability of the testimony of a Government informant/accomplice

8   underscores the need for **complete** disclosure of information relating to credibility.

9   *See United States  v. Caldwell*, 466 F.2d 611 (9th Cir. 1972).

10      Thus, while an unwritten statement might not fall within the Jencks Act (18

11  U.S.C. § 3500), no decision falling within the progeny of *Brady* has placed such a

12  limitation upon the prosecution's constitutional duty to disclose.  Indeed, judicial

13  adoption of such a limitation on *Brady* would create a virtual license to the prosecution

14  to fail to reduce such information to writing solely to avoid compliance with their

15  constitutional obligation under *Brady*.

16      As such, the defense must be allowed to question the cooperators and their

17  counsel under oath to determine the existence of any unwritten statements which must

18  properly be disclosed.

19      The case of *Spicer v. Roxbury Correctional Institute*, 194 F.3d 547 (4th Cir.

20  1999), speaks directly to this motion.  In *Spicer*, an attorney for an eyewitness made a

21  proffer of the witness' testimony to an Assistant U.S. Attorney.  The witness was

22  testifying in exchange for leniency in an unrelated case.  The witness' attorney made a

23  proffer to the government in which the attorney said the witness was not an eyewitness

24  to the key events in the case.  The witness testified, however, that he was an

25  eyewitness.  The Fourth Circuit found the Assistant U.S. Attorney had a *Brady*

26  obligation to turn over the attorney's proffer.  We are asking for similar information in

27  this case.

28

1    In *United States v. Sudikoff*, 36 F. Supp.2d 1196 (C.D. Cal. 1999) the Court was

2    called upon to determine the boundaries of the government's discovery obligations

3    relating to the agreements reached between the government and accomplice

4    witnesses.  The defense moved to compel disclosure of documents and information

5    relating to the period between an accomplice witness's initial contact with the

6    government regarding possible cooperation and the point at which the witness and the

7    government reached an agreement concerning the accomplice witness's testimony.

8    In describing the proffer system *the Sudikoff* court noted:

9    Because this process can be lengthy and because it often carries some of the
     typical negotiating give-and-take, it is possible, maybe even likely, that the
10   witness's proposed testimony that was proffered at the beginning of the process
     differed in some respects from the testimony proffered at the end of the process.
11   For example, it is likely that during initial contacts with the government the
     witness would proffer a less detailed version of his testimony than he would once
12   it became more likely that an agreement would be reached. Though such
     variations could stem entirely from the nature of this process, a defendant
13   implicated by the accomplice witness could reasonably argue that they stem
     from the accomplice witness's tendency to embroider on the truth. Thus, the
14   existence of such variations might reasonably be held to be favorable to the
     defense.

15   *United States* v. *Sudikoff*, 36 F. Supp. 2d 1196, 1202 (C.D. Cal. 1999)

16   Using a *Brady* and *Giglio* analysis, the *Sudikoff* court concluded:

17
18   Because *Brady* seeks to protect the quality and completeness of the evidence
     upon which the jury bases its verdict, it is understandable that information that is
19   not likely to result in admissible evidence is irrelevant. Therefore, *Brady* does not
     require the disclosure of information that would only assist the defense in
20   creating its trial strategy. It does, however, require the disclosure of information
     that is likely to result in admissible evidence that would give the jury a court a
21   more complete basis for judging guilt or punishment.

22   The Court holds that proffers of an accomplice witness that led to a leniency

23   agreement and information that reveals the negotiation pursuant to which that
     agreement was reached might reasonably be considered favorable to the
24   defendant's case. This is for two reasons. First, to the extent the proffers and
     other information reveal that the witness's proposed testimony may have varied
25   over time, they may reveal inconsistencies relevant to the accomplice witness's
     credibility and within the scope of *Brady*. Second, to the extent the proffers and
26   other information reveal the accomplice witness's motives and desire to seek an
     immunity agreement, they are relevant to the witness's credibility and within the
27   scope of *Giglio*.
28

1

Thus, the Court concludes that information that reveals the process by which an

2

accomplice witness and the government reach a leniency agreement is relevant
to the witness's credibility because it reveals the witness's motive to testify
against the defendant. Therefore, such information is discoverable under Brady
and Giglio.

3

4

The Court finds that any information that reveals any variations in the proffered

5

testimony of an accomplice witness testifying pursuant to a leniency agreement
is relevant to the witness's credibility and therefore must be disclosed under
Brady. In addition, any information that reveals the nature of the negotiation
process that led to the leniency agreement is relevant to the witness's motives to
testify and must be disclosed under Giglio.

6

7

8

9

*Sudikoff* at 1201-1205.

10

11

Finally, with respect to a consideration of the Attorney-Client privilege in the

12

proffer context, the *Sudikoff* court concluded that the disclosure of witness proffers

13

would not violate any privilege, holding:

14

15

Thus, if a client communicates with his lawyer for the purpose of having that
lawyer relay that communication to a third party, the communication is not
"confidential" and not protected by lawyer-client privilege. See e.g., *United States
v. Oloyede*, 982 F.2d 133, 141 (4th Cir.1992) (no privilege for communications
intended to be relayed to INS); *Esposito v. United States*, 436 F.2d 603, 606 (9th
Cir.1970) (no privilege for communications intended to be relayed to court);
McLaughlin, supra, at § 503.15. Therefore, the Court holds that a client's
communications of proposed testimony made with the intent that the lawyer relay
the communications to the government are not protected by the lawyer-client
privilege.[5]

16

17

18

19

20

21

Furthermore, similar motions have been granted by the Honorable Irma E.

22

Gonzalez in *United States v. Mark Toycen, et al.*, Case No. 03-CR-0531-IEG, and by

23

the Honorable Barry Ted Moskowitz in *United States v. Jaconski*, Case No. 01-CR-

24

25

26

    [5] Even if the government promised the witness confidentiality, this would not be sufficient to
prevent disclosure. Cf. *United States v. De La Cruz*, 996 F. 2d 1307, 1312 n. 1 (1st Cir., 1993) ("We do not
formally resolve the government's claim that it can avoid *Brady* by promising confidential treatment to
someone it interviews; but we are skeptical of any such blanket claim and would expect the government
affirmatively to present the issue to the district court if otherwise exculpatory material were withheld on this
ground.").

27

28

1415-BTM.[6]  Judge Gonzalez ruled that the government must disclose any inconsistent

statements, whether in writing or oral, between the attorney proffered information and

the actual debriefing.  Judge Moskowitz in ruling that the defense was entitled to the

requested information stated:

> [The defense is] entitled, in general, to two things
> here.  I think they are entitled to any specific request made
> by an assistant U.S. attorney to a cooperating defendant or
> suspect, that is a person who was not prosecuted but could
> have been prosecuted, directly or through the attorney, for
> specific information about a person or subject.
>
> The other thing they are entitled to…any inconsistent statement made by
> a witness or his counsel must be disclosed.
>
> I think if you are interviewing somebody and the person
> says, I don't know Mr. Diamond, and then later on says, oh, I
> know Mr. Diamond, I think you have to disclose that in letter
> form saying that at such and such a time, at one point during
> the interviewing process, X said that they didn't know Mr.
> Diamond.

Therefore, in this case, we request the proffer information described herein.

### Conclusion

For the foregoing reasons, defendant VICTOR RAMOS, by and through his

attorney, respectfully requests that this Court grant his motion for disclosure of proffer

information.

Dated: November 13, 2007           */s/ Mark F. Adams*_____
                                    MARK F. ADAMS
                                    Attorney for Defendant
                                    **Victor Ramos**

---

[6] The defense can make transcripts of these rulings available if the court desires.